**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BILLY RION,

      Plaintiff,

v.                             No. CV 11-0269 JB/CG

BERNALILLO COUNTY SHERIFFS: ANTHONY
MEDRANO, LANCE LONGHI, TODD JAMES,
CHRISTIAN ERB, BRODRICK SHARP, and
DONNIE HIX,

      Defendants.

<u>**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**</u>

**THIS MATTER** comes before the Court on *County Defendants'* Martinez *Report*
filed December 13, 2011, (Doc. 25); *Supplement to County Defendants'* Martinez
*Report* filed December 16, 2011, (Doc. 29); *County Defendants' Second* Martinez
*Report* filed June 27, 2012, (Doc. 38); Plaintiff's *Response to Defend[a]nt[s']* Martinez
*Report*  filed July 18, 2012, (Doc. 39); *Addendum to Plaintiff's Response to* Martinez
*Report* filed July 25, 2012, (Doc. 40); *Response to Defend[a]nt[s']* Martinez *Report
Supplement* filed September 20, 2012, (Doc. 43); *County Defendants' Third* Martinez
*Report* filed October 18, 2012, (Doc. 45); Plaintiff's *Response to Defend[a]nt[s'] Third*
Martinez *Report* filed November 16, 2012, (Doc. 46); *Defendants' Supplemental
Memorandum* filed October 25, 2013, (Doc. 65); *Plaintiff's Response to Defend[a]nt[s']
Supplemental Memorandum* filed November 7, 2013 (Doc. 66); and *Defendants' Reply
in Support of Their Supplemental Memorandum* filed November 15, 2013, (Doc. 67).
This matter was referred to this Court to make proposed findings of fact and
recommended disposition by United States District Court Judge James O. Browning.
(Doc. 3).

I.      **Background**

Plaintiff Billy Rion filed the *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983* on March 20, 2011. (Doc. 1). He supplemented that pleading with the *Addendum to Original Complaint and Request to Appoint Attorney*, (Doc. 5), and *Memorandum in Support of Prisoners Complaint*, (Doc. 6) on April 7, 2011. The Court shall construe all of these documents together as the "Complaint." (Doc. 14 at 1).

Plaintiff has brought various constitutional claims under 42 U.S.C. § 1983, and "civil law including tort law," against Defendants Anthony Medrano, Donnie Hix, Broderick Sharp, Christian Erb, Todd James, and Lance Longhi, both in their individual and official capacities. (Doc. 1 at 1, 2). These claims arise from events leading up to, and immediately following, Plaintiff's arrest on October 18, 2010 in Albuquerque, New Mexico.

Plaintiff alleges that Defendants deliberately crashed their unmarked police vehicles into his car, chased him, and beat him once they arrested him. (Doc. 1 at 2; Doc. 6 at 1–2). He claims that he was not provided with medical treatment and that he continues to suffer from the injuries caused by the collision and subsequent assault. (Doc. 1 at 2, 4–5). He contends that officers stole $500 from him while he was handcuffed and that they planted crack cocaine on him and in his vehicle. (Doc. 1 at 4–5, 7; Doc. 6 at 1–2).

Plaintiff requests that the Court find Defendants to be at fault, and award him monetary damages in the amount of $1,350,000; payment of all of his future, past, and present medical bills; court costs; attorney fees; "[a]ny damages the Court deems necessary"; and "[a]ny other relief a judge or jury may find adequate." (Doc. 1 at 8).

Plaintiff further demands that the Court enter a restraining order against Defendants. (Doc. 1 at 8; Doc. 6 at 5).

Defendants deny unlawfully assaulting Plaintiff, planting drugs, or stealing money. (Doc. 20 at 2–4). Defendants assert several affirmative defenses, allege they are entitled to qualified immunity, that the actions described in the Complaint do not constitute a violation of Plaintiff's constitutional rights, and that the actions of Defendants were objectively reasonable.  (Doc. 20 at 7–8; Doc. 65).

To resolve the key disputed facts, the Court held an evidentiary hearing on July 23, 2013.[1] Plaintiff was present and appeared *pro se*; counsel for Defendants was also present. Plaintiff and Defendants Sharp, Longhi, Gordon, and Hix testified. After hearing the witnesses' testimony and argument by Plaintiff and counsel, the Court requested the parties submit briefing on issues raised during the hearing. (Doc. 64).

The Court has carefully reviewed the testimony presented at the evidentiary hearing, all of the submissions of the parties, and the entire record proper. For the reasons stated below, the Court recommends that all of the claims in this lawsuit be dismissed.

## II.    Standard of Review

The Court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* under 28 U.S.C. § 1915(e)(2) "at any time if . . . the action . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted." The Court also may dismiss a complaint *sua sponte* under rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing

---

[1] The transcript of the proceeding was filed in the record as *Transcript of Motions Hearing* ("TR") on October 7, 2013. (Doc. 63).

him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991) (quoting *McKinney v. Okla. Dep't of Human Serv.*, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In the Court's Orders directing submission of a *Martinez* Report, the parties were advised, pursuant to *Hall*, 935 at 1111, that the verified complaint and *Martinez* Reports could be treated as affidavits and used in deciding whether to grant summary judgment. (Doc. 36 at 4; Doc. 44 at 2). Considering that neither Plaintiff nor Defendants have filed any dispositive motions since submitting the *Martinez* Reports and supplemental briefs, the Court shall construe them as motions for summary judgment.

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In reviewing Plaintiff's *pro se* Complaint, the Court applies the same legal standards applicable to pleadings that counsel drafts, but liberally construes the

allegations. *See Northington v. Jackson, 973 F.2d 1521, 1520–21 (10th Cir. 1992)*.

Nevertheless, a *pro se*, non-moving party must still "'identify specific facts that show the

existence of a genuine issue of material fact.'" *Munoz v. St. Mary-Corwin Hospital*, 221

F.3d 1160,1164 (10th Cir. 2000) (quoting *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 484

(10th Cir. 1995)).

### III.    Facts

It is undisputed that on October 18, 2013 at approximately 4 p.m., Plaintiff was

driving down Madeira Street in a Pontiac G6. (Defendants' Exhibits Admitted at

Evidentiary Hearing ("Def Ex.") 2; TR 8:1–2). At that time, Plaintiff was on probation for

previous cocaine-related convictions. (Doc. 6 at 4; Doc. 42-1 at 1–2; Def. Ex. 7 at 4:16–

19). Defendants were employees of the Bernalillo County Sheriff's Office. (Doc. 20 at 4–

5). Defendants had information from a confidential informant that Plaintiff was trafficking

illegal drugs, and was in possession of illegal drugs, which he intended to sell to the

confidential informant on October 18, 2013. (Def. Ex. 2 at 1; TR 59:10–25, 60:8–10).

Defendants, and other officers of the Middle Rio Grande Valley Narcotics Task

Force, were conducting mobile surveillance on Plaintiff in the area of San Mateo

Boulevard and Gibson Boulevard. (Def. Ex. 2 at 1; Def. Ex. 6 at 1; TR 59:10–25, 60:8–

10; TR 8:2–8). Defendants Sharp and Medrano and Officer C. Linehan were in a Ford

Expedition; Defendants Erb and James were in a Chevrolet Tahoe; and Defendant

Gordon and Officer J. Rodriguez were in a Ford F-150 truck. (Def. Ex. 2 at 1; Def. Ex. 6

at 1). The confidential informant approached Plaintiff's motor vehicle, which was

stopped at the intersection of Anderson Avenue and Madeira Drive. (Def. Ex. 2 at 1;

Def. Ex. 6 at 1; TR 22:20–23, 41:4–17, 60:8–13).

Defendants turned on the police emergency lights on their vehicles and approached Plaintiff's car from the front and rear. (Def. Ex. 2 at 1; Def. Ex. 6 at 1; TR 43:24–25, 44:1–18). Defendant Medrano exited his vehicle and identified himself as a police officer. (Def. Ex. 6; TR 44:19–24, 47:5–25). Defendants were in plain clothes but wearing insignia to identify them as police officers. (TR 40:13–20). Plaintiff engaged his motor vehicle, and struck both the Chevrolet Tahoe and the Ford Expedition as he sped away from the officers. (Def. Ex. 6 at 1; TR 8:2–16, 41:20–25, 42:1–10, 60:8–16, 65:1–14; 67:25, 68:1, 92:16–18).

Defendant Gordon and Officer Rodriguez gave pursuit of Plaintiff in the Ford 1-150, and Defendants Medrano and Sharp and Officer Linehan followed in the Ford Expedition. (Def. Ex. 2; Ex. 6 at 1). Defendants Gordon observed Plaintiff throw a black bag out of the car window as Plaintiff drove eastbound on Gibson Boulevard at a high rate of speed, while being pursued by Defendants. (Def. Ex. 2 at 2; TR 88:19–24, 89:9–10). Defendant Gordon retrieved the black bag and found it contained illegal drugs. (TR 43:1–11, 89:17–24).

Plaintiff abandoned his vehicle around the area of Louisiana Boulevard and Gibson Boulevard, because it was no longer drivable, and concealed himself in a storage shed behind an apartment complex. (Def. Ex. 2 at 2; TR 43:12–19, 46:12–15; TR 12:19–25). Officers set up a perimeter to capture Plaintiff. (Doc. Ex. 2 at 1; Def. Ex. 6 at 1; TR 45:19–25). Defendants Sharp and Longhi located Plaintiff in the storage shed approximately 15 to 20 minutes later, and identified themselves as police officers and ordered Plaintiff to come out of the storage shed. (TR 46:8–14, 76:20–21, 77:1–5).

Defendants Sharp and Longhi "formed a 90-degree angle" and Defendant Sharp opened the door while brandishing a firearm. (AR 45:5–11).

Plaintiff initially had his arms up, but dropped them as he stepped out of the storage closet. (AR 47:14–15, 48:3–13). Plaintiff exited the shed in what Defendants Sharp and Longhi described as "an aggressive stance." (Def. Ex. 3 at 1; TR 49:8–9, 76:21–22, 78:3–14). Defendant Sharp testified that at that point they saw Plaintiff did not have a weapon, and he holstered his firearm. (AR 49:9–11).

Plaintiff did not respond to commands to get on the ground, and had to be subdued by Defendants Sharp and Longhi. (TR 76:22–24, 78:18–25, 79:1). Plaintiff was forced to the ground by Defendant Longhi by using the "arm-bar" technique. (TR 79:2–13). Defendant Longhi testified that he extended Plaintiff's arm out and used pressure slightly above Plaintiff's elbow to take Plaintiff to the ground. (TR 79:7–9). He then went into a kneeling position as Plaintiff came into a submissive position face down on the ground. (TR 79:9–11). Defendant Sharp stated "we went hands-on" and that Plaintiff was "face-down almost on top of [Defendant] Longhi's knee," and that "[they] had a struggle." (AR 49:12, 16–18). Plaintiff was handcuffed and arrested by Defendants Sharp and Longhi. (Def. Ex. 1 at 2; Def. Ex. 3 at 1; AR 49:18).

After the arrest, Defendant Hix photographed Plaintiff, the motor vehicles, the black bag, the scene of the arrest, and other evidence obtained during the search and seizure. (Def. Ex. 5 at 4). The photographs show that Plaintiff had some abrasions to his face and body, and his shirt was soiled by dirt. (Def. Ex. 16–34; TR 52:22–25, 53:5–11, 54:3–15). Defendant Medrano reported that Plaintiff admitted that he had seen the officers' emergency lights but "panicked." (Def. Ex. 6 at 2).

An ambulance arrived to provide medical attention to Defendant Longhi who had injured his knee. (TR 49:12–19, 51:16–19, 58:21–25). Plaintiff was offered, and refused, medical attention at that time. (TR: 50:5–8, 21–24, 61:10–15, 62:2–8).

The substance in the black bag that Plaintiff threw out of the car window field tested positive for crack cocaine. (Def. Ex. 6 at 2, 8–11). Crack cocaine was found in Plaintiff's right pants pocket and in his vehicle by Defendant Medrano. (Def. Ex. 6 at 2).

Plaintiff's probation was revoked as a result of the incident and he was sentenced to six years imprisonment. (Doc. 6 at 4). Plaintiff was also charged with various criminal felonies related to the October 18, 2010 incident. (Doc. 5 at 3). He subsequently entered into a "no contest" plea agreement to one count of drug trafficking by possession with intent to distribute cocaine, two counts of aggravated battery with a deadly weapon, and one count of tampering with evidence. (Doc. 42-1; Def. Ex. 7 at 4:8–13; 8–13). He was sentenced to 14 years of incarceration, five years of supervised probation, and two years of parole. (Doc. 42-1; Def. Ex. 7 at 5:10–14; 8–13; TR 35:3–25, 36:5–25, 37:1–4).

## IV.   Analysis

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress constitutional violations committed under color of state law. *Quezada v. County of Bernalillo*, 944 F.2d 710, 714 (10th Cir. 1991). A plaintiff bringing a claim under § 1983 must prove that the defendant has deprived him of a right secured by the Constitution and laws of the United States while acting under the color of state law. *Quezada*, 944 F.2d at 714. A § 1983 plaintiff must also prove other tort elements, often established by analogy to common law torts. *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011) (citing

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1257–58 (10th Cir. 2007) & *Becker v. Kroll*, 494 F.3d 904, 913–14 (10th Cir. 2007)).

      A.    <u>Unreasonable Search and Seizure</u>

Plaintiff asserts that Defendants Medrano, Sharp, Erb, and James "attempted an illegal seizure" by colliding their vehicles into his. The Court will characterize Plaintiff's statement as a claim of unreasonable search and seizure under the Fourth Amendment. Even after being instructed by the Court to do so, Defendants have failed to address this claim in any meaningful way.

The Fourth Amendment protects individuals against unreasonable searches and seizures, including seizures of the person. U.S. CONST. amend IV; *California v. Hodari D.*, 499 U.S. 621, 624 (1991). "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restricted." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). If a reasonable person would believe that an officer, through his words and actions, was ordering an individual to stop, then that constitutes a show of authority. *Hodari*, 499 U.S. at 628. A seizure does not occur if an individual does not yield to a show of authority. *Id.* at 626. As the Supreme Court found in *Hodari*, the word 'seizure' does not apply "to the prospect of a policeman yelling 'Stop in the name of the law!' at a fleeing form that continues to flee." *Id.*

In this case, Plaintiff argues that Defendants Medrano, Sharp, Erb, and James did not have reasonable suspicion to detain him because they never witnessed a drug transaction between him and the confidential informant. (Doc. 6 at 5; Doc. 66 at 3). Plaintiff also contends that he did not know the Defendants were law enforcement agents because they did not identify themselves as officers, were wearing ski masks,

and did not engage the emergency equipment on their vehicles. (Doc. 1 at 4; Doc. 6 at 3; Doc. 66 at 3).

Plaintiff was never seized pursuant to the Fourth Amendment as a result of the collision. Plaintiff's own characterization of this claim as an *attempted* illegal seizure concedes this point. The Supreme Court has unequivocally stated that an individual must yield to a show of authority for a seizure to occur; in this case, Plaintiff drove away and evaded capture by the officers rather than yield to the authorities. Plaintiff was not arrested until approximately 15 to 20 minutes later.

The Court finds that all of the conduct Plaintiff challenges is pre-seizure conduct.[2] As the Seventh Circuit stated in *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992), "pre-seizure conduct is not subject to Fourth Amendment scrutiny." Therefore, the Court need not consider whether Defendants Medrano, Sharp, Erb, and James' actions were reasonable under the Fourth Amendment.

Defendants Medrano, Sharp, Erb, and James did not effectuate a seizure of Plaintiff, and thus, there could not have been a wrongful detention under the Fourth Amendment. Plaintiff has failed to state a claim under FED. R. CIV. P. 12(b)(6), and the Court recommends that the claim for unreasonable search and seizure be dismissed with prejudice.

### B.    *Malicious Prosecution*

Plaintiff alleges that several of the defendants engaged in a conspiracy to ensure he was charged and convicted of a crime. Plaintiff contends that Defendant Gordon falsified police reports by stating that he witnessed Plaintiff throw the black bag onto the

---

[2] Plaintiff admits that after the collision Defendants had probable cause to arrest him and search his car because he fled the scene of the accident. (AR 17:25, 18:1–4).

street, and lied when he said it contained crack cocaine, baggies, and a scale. He also

maintains that Defendants Medrano and Hix lied about finding crack cocaine in his

pants pockets when they searched him at the police station and that Defendant

Medrano perjured himself when he reported finding crack cocaine in Plaintiff's vehicle.

(Doc. 6 at 2). He claims that Defendants lied to the District Attorney's office to help

secure an indictment against him for drug trafficking. (Doc. 6 at 2, 5). He also contends

that Defendants perjured themselves in pre-trial interviews and at a court proceeding,

which led to his probation being revoked and imposition of a six-year term of

imprisonment. (Doc. 6 at 4).

Plaintiff's allegations resemble the common law tort of malicious prosecution.

*See Miller v. Spiers*, No. 07-2134, 339 Fed. App'x 862, 867 (10th Cir. July 27, 2009)

(unpublished).[3] Therefore, the Court will characterize Plaintiff's claim as one for

damages under a theory of § 1983 malicious prosecution for several distinct violations

of his constitutional rights under the procedural component of the Due Process Clause.

*See McCarty*, 646 F.3d at 1285 (State's expert witness perjured her testimony and

destroyed and withheld exculpatory evidence; subsequent damages claims were

properly characterized as malicious prosecution under § 1983). The Tenth Circuit

analogizes a § 1983 malicious prosecution claim to the common law tort of malicious

prosecution in articulating its elements. *McCarty*, 646 F.3d at 1285. Those elements

are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2)

the original action terminated in favor of the plaintiff; (3) there was no probable cause to

support the original arrest, continued confinement, or prosecution; (4) the defendant

---

[3] Defendants misconstrue these claims as unspecified *prima facie* torts, and assert immunity under the
New Mexico Tort Claims Act ("NMTCA"). (Doc. 65 at 13–14). Malicious prosecution is waivable under the
NMTCA, and therefore Defendants argument is baseless. N.M. Stat. Ann. § 41-4-12 (2013).

acted with malice; and (5) the plaintiff sustained damages." *Id.* (quoting *Novitsky*, 491 F.3d at 1258).

Plaintiff's malicious prosecution claims are rooted in his insistence that he is innocent of trafficking or possessing drugs on October 18, 2010. Plaintiff argues that he never owned or possessed the black bag recovered by Defendant Gordon, that he did not toss that bag from the vehicle onto the street, and that he was not in possession of drugs on October 18, 2010. (Doc. 6 at 3; Doc. 66 at 4). He claims that Defendants engaged in numerous unconstitutional activities that led to his incarceration.

If the Court accepted these arguments as true, they necessarily imply the invalidity of the six-year, probation-revocation sentence Plaintiff received, which was based on false evidence and testimony of the Defendants. It would also necessarily imply the invalidity of Plaintiff's plea of no contest and sentence for drug trafficking for the October 18, 2010 incident.

Plaintiff cannot assert a § 1983 claim that, if successful, would imply the invalidity of a previous conviction or sentence unless the plaintiff can demonstrate favorable termination of the prior conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

> [To] recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87.

As a result of the events that occurred on October 18, 2010, Plaintiff's probation was revoked and he was sentenced to six years imprisonment, and he entered into a

*nolo contendre* plea agreement for the charges of battery, drug trafficking, and tampering of evidence and was sentenced to 14 years of imprisonment, five years of supervised probation, and two years parole. Plaintiff does not allege that those sentences have since terminated in his favor.

Since Plaintiff's arguments of actual innocence with regards to drug possession and trafficking would necessarily imply the invalidity of his sentences, they are the type *Heck* mandates should be pursued through a petition for habeas corpus and not a § 1983 complaint. *See Johnson*, 411 Fed. App'x. at 198–99 (holding that a malicious prosecution claim brought to challenge evidence gathered during an illegal arrest is the basis of a habeas corpus claim, not a § 1983 complaint). After careful consideration, the Court finds that all of Plaintiff's malicious prosecution claims are barred by *Heck*, and recommends that this claim be dismissed without prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice.").

The Court could liberally construe the Complaint as a 28 U.S.C. § 2254 petition for habeas corpus, but it would be defective. To obtain habeas relief, Plaintiff would have to name the warden of the correctional facility in which he is confined as a necessary party to the lawsuit, which he has not done. Rule 2(a) of the *Rules Governing Section 2254 Cases in the United District Courts*. Accordingly, even if the Court construed the § 1983 lawsuit as a § 2254 habeas petition, it would fail. *See Kailey v. Ritter*, No. 11-1372, 500 Fed. App'x. 766, 768–70 (10th Cir. Oct. 24, 2012) (unpublished).

13

C.      *Theft*

Plaintiff alleges that "[o]fficers stole my money—500.00—off of my person and did not log it as evidence or on my books when I was taken to jail." (Doc. 1 at 7). He contends that his money was stolen by officers when they searched him. (Doc. 6 at 3). The only facts he puts forth to support this claim is that he had $520 in his pocket before he was arrested, but was booked with only $7.60 immediately following his arrest. (Doc. 1 at 7; Doc. 5 at 2). Defendants have interpreted this claim to be an unspecified *prima facie* tort, and contend that they are entitled to immunity under the NMTCA. Defendants are wrong, because officers waive immunity for "violation[s] of property rights" under the NMTCA. N.M. Stat. Ann. § 41-4-12 (2013). Even though they were ordered to do so, Defendants have failed to address this claim in any meaningful way. The Court will characterize the claim as one brought under the Fourteenth Amendment for deprivation of property without due process, as well as various state laws. *See* U.S. Const. amend. XIV, § 1.

The Court finds that this claim lacks merit. First, Plaintiff has failed to allege that any of the Defendants in this case stole money from him; Plaintiff repeatedly refers to unspecified "officers" who committed the theft. Plaintiff testified that he doesn't remember who searched him, but they took $400 or $500 from his pocket and his identification. (TR 14:21–23). Even if the Court were to construe the claim as brought against all of the defendants in this case, there is no evidence from which a jury could reasonably conclude Defendants stole money from Plaintiff. The isolated fact that one or several Defendants searched Plaintiff after the arrest, and may have had access to the money in Plaintiff's pocket, is merely a "scintilla" of evidence. *See Anderson*, 477 U.S. at 252.

Further, even if one or several Defendants had stolen Plaintiff's money, that act is a type of random and unauthorized act which does not necessarily implicate Plaintiff's due process rights because post-judicial remedies were available him. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff could have brought a claim of intentional tort of conversion under New Mexico state law, and therefore Plaintiff should have first exhausted available state law remedies or demonstrated those remedies are inadequate before asserting a § 1983 claim.[4]

Plaintiff has not alleged the available state law remedies are inadequate, or that he exhausted such remedies prior to bringing this lawsuit.[5] Therefore, the Court finds that Plaintiff has failed to state a viable § 1983 claim related to the conversion of his money, and recommends that the claim be dismissed without prejudice. *See Cotner v. Fugate*, No. 95-5256, 1996 U.S. App. LEXIS 18712, *8 (10th Cir. Jul. 29, 1996) (unpublished).

       D.       <u>Deliberate Indifference to Plaintiff's Serious Medical Needs</u>

Plaintiff alleges that he was not given medical treatment immediately following his arrest, even though he had physical injuries. (Doc. 1 at 5). He asserts that "[o]fficers should always offer medical assistance when a harsh arrest occurs or a 'hard' traffic stop occurs." (Doc. 6 at 3). The Court will characterize Plaintiff's claim as one for deliberate indifference of a serious medical need under the Fourteenth Amendment. Defendants have only addressed this claim as a superficial *prima facie* tort, which is

---

[4] In New Mexico, conversion is defined as "the unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Eden v. Voss*, No. 03-2030, 105 Fed. App'x. 234, 242 (10th Cir. July 9, 2004) (unpublished) (quoting *Sec. Pac. Fin. Serv. v. Signfilled Corp.*, 956 P.2d 837, 842 (N.M. Ct. App. 1998)).
[5] In the Complaint, Plaintiff stated that he did not have any pending lawsuits in state or federal court dealing with the same facts involved in this lawsuit. (Doc. 1 at 7).

inadequate because this claim is clearly a constitutional one. Again, Defendants have failed to provide meaningful analysis of Plaintiff's claims despite being ordered to do so.

The Fourteenth Amendment requires officials to provide medical care to a pretrial detainee with a serious medical need of which they are aware. *See Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985). The standard is applicable to arresting officers. *Howard v. Dickerson*, 34 F.3d 978, 981 (10th Cir. 1994). Pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Martinez v. Begg*s, 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff asserting a "deliberate indifference" claim must show that (1) the deprivation was objectively sufficiently serious, and (2) the defendants disregarded a known or obvious risk to the plaintiff's serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The deprivation must be sufficiently serious, meaning that it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layman would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). One type of "deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

The Court is unable to find any case law to support Plaintiff's contention that an arresting officer is constitutionally required to offer medical care following a "harsh arrest" or "hard traffic stop." Defendant Sharp testified that Defendant Longhi received medical treatment at the scene of the incident for a knee injury, and was transported to

a hospital. Defendant Sharp also stated that he offered Plaintiff the opportunity to be evaluated by those same medical professionals, and Plaintiff refused medical care. Plaintiff contends no attempt was made by the arresting officers to give him access to medical treatment and that medical staff at the Bernalillo County Metropolitan Detention Center ("BCMDC") refused to treat him. (Doc. 1 at 5; Doc. 6 at 3).

Plaintiff's testimony is significantly undermined by medical treatment notes written by the BCMDC's medical staff dated October 18, 2010, which show that he was given medical attention upon booking. (Doc. 25 at Ex. A). Plaintiff states that the nurses at BCMDC refused to treat him, but the record shows that they in fact evaluated him. The BCMDC "Medical History and Screening," which bears Plaintiff's signature, indicates that at that time Plaintiff did not have a medical problem that required immediate medical attention, and he only complained of thigh and back pain. (Doc. 25 at Ex. A at 1).

Further, Plaintiff has failed to allege that he was seriously injured at the time of his arrest. He testified that x-rays were subsequently taken of him while he was in jail, which did not show any physical injuries. (TR 20:1–5). The allegation of pain by itself does not establish the serious nature of Plaintiff's injuries. Given Plaintiff's failure to allege any serious injury with specificity, he has not pled sufficient facts to establish a due process violation. *See Bell v. Midwest City Police Dep't*, No. 93-6045, 1993 U.S. App. LEXIS 16836, *6–7 (10th Cir. June 18, 1993) (unpublished).

Plaintiff states that he was treated several weeks later and prescribed painkillers, which he maintains were necessary to manage his "extreme pain" from the injuries to his neck and back. (Doc. 66 at 6–7) (citing Ex. Q). Plaintiff has not alleged that

Defendants were responsible for the delay in his pain management. Nothing in the record indicates that Defendants had control over, or intentionally denied or delayed, Plaintiff's access to medical care once he was booked in BCMDC.

The Court does not find Plaintiff's testimony regarding his medical treatment to be credible. The Court finds that Defendant Sharp offered medical treatment to Plaintiff at the scene of the arrest, which Plaintiff refused. Upon being booked into BCMDC, Plaintiff was examined by medical professionals. The Court does not find that this amounted to unreasonable delay. Plaintiff did not alert Defendants that he required medical treatment beyond what was offered to him, and Defendants could not have personal knowledge of Plaintiff's medical need. In fact, Plaintiff asserted that he did not have a medical problem requiring immediate medical attention. Therefore, the Court recommends that Plaintiff's claim of deliberate indifference to a serious medical need be denied with prejudice.

Plaintiff has also sued Defendants in their official capacities as law enforcement officers. Again, Defendants have entirely ignored these claims. However, Plaintiff has not alleged a custom or policy that resulted in the deprivation of his constitutional rights. In *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978), the U.S. Supreme Court held that suing a defendant in his or her official capacity under 42 U.S.C. § 1983 is essentially another way of suing the county or municipality that employs them. *Id.* at 690. When seeking to hold a municipality liable for the acts of its employee, a plaintiff "must prove (i) that a municipal employee committed a constitutional violation; and (ii) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.

1998) (citing *Monell*, 436 U.S. at 694). For a custom or policy to be the "moving force" behind the constitutional violation, the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiff has not alleged that Bernalillo County Sheriff's Office has a policy of deliberately denying or delaying medical access to seriously-ill, pretrial detainees. Therefore, the Court recommends that Plaintiff's claims of against Defendants in their official capacities be dismissed without prejudice.

E.    *Unreasonable or Excessive Force Claims*

Plaintiff has asserted unreasonable or excessive force claims against Defendants. Plaintiff has alleged that Defendants Medrano, Sharp, Erb, and James used excessive force in violation of his substantive due process rights, and that Defendants Sharp and Longhi used excessive force in violation of his Fourth Amendment rights.

1.    *Substantive Due Process Claims*

Plaintiff claims that Defendants Medrano, Sharp, Erb, and James "illegally crashed" their undercover vehicles into his vehicle. (Doc. 1 at 4; Doc. 6 at 5). Plaintiff alleges that his car

> was hit so hard that extensive damage to the front of [his] vehicle was caused. [He] was then subsequently and simultaneously hit from the back by Deputies Erb and James (who didn't acknowledge that they were officers either) who jumped out with guns and pointed at [him] walking towards [his] vehicle . . . [he] felt extensive pain in [his] neck, arms and legs.

(Doc. 1 at 4). He contends that Defendants "battered" him by ramming their vehicle into his, at which point he fled from the scene. (Doc. 66 at 3) (citing Ex. D, E).

The Court construes those statements as asserting a claim of unreasonable or excessive force against Defendants Medrano, Sharp, Erb, and James under the substantive due process clause. While Defendants have correctly characterized the claim as one alleging "excessive force," they have incorrectly addressed it as being brought under the Fourth Amendment. (Doc. 65 at 8–12). As explained above, the motor vehicle collision did not result in a seizure under the Fourth Amendment, and therefore the alleged conduct at issue was "pre-seizure" conduct. The Tenth Circuit treats excessive force claims arising prior to, not in the course of the actual "seizure," as those that should be analyzed under substantive due process principles. *See Latta v. Keryte*, 118 F.3d 693, 702 (10th Cir. 1997) (Fourteenth Amendment); *Bella v. Chamberlain*, 24 F.3d 1251, 1257 (10th Cir. 1994) (Fifth Amendment).

The Due Process Clause "protects citizens from governmental deprivation of life, liberty and property without due process of law." *Bella*, 24 F.3d at 1257. "Under the due process standard, the factors relevant to whether the use of force is excessive are: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the . . . officer." *Hannula v. City of Lakewood*, 907 F.2d 129, 131–32 (10th Cir. 1990). Force inspired by malice or by "unwise, excessive zeal amounting to an abuse of official power that shocks the conscience . . . may be redressed under section 1983." *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir. 1985). In this case, the Court finds that the evidence "fail[s] to meet this high threshold." *Bella*, 24 F.3d at 1257.

The Court has taken into account the testimony at the evidentiary hearing and the entirety of the record. The Court does not find that Defendants used unreasonable force in trying to impede Plaintiff from fleeing. Defendants were faced with a driver they reasonably believed to be in possession of cocaine. Defendants attempted a "box" maneuver to prevent Plaintiff from leaving the scene. Defendants activated their emergency equipment, and stepped out of the vehicle, brandished their firearms, and attempted to arrest Plaintiff. Plaintiff struck the Defendants' vehicles as he evaded arrest, sustaining damage to his vehicle and injuring himself. Therefore, the Court finds that any injuries he sustained were a direct result of his own actions, and not a result of any action taken by Defendants.

An excessive force claim under the due process standard cannot survive without evidence of physical injury caused by the officer's actions. *Latta*, 118 F.3d at 702 (citing *Bella*, 24 F.3d at 1257). In this case, there exists no evidentiary support that Plaintiff's alleged injuries were caused by Defendants Medrano, Sharp, Erb, and James crashing into Plaintiff's car. Finally, Plaintiff has failed to allege or demonstrate that Defendants acted with improper motive or malice.

For the reasons stated above, the Court recommends that Plaintiff's excessive force claims under the due process clause against Defendants Medrano, Sharp, Erb, and James be dismissed with prejudice.

### 2.   *Fourth Amendment Claims*

Plaintiff alleges that he was physically assaulted by Defendants Longhi and Sharp during and immediately after the arrest. Since the alleged conduct took place in the course of the seizure, the Court shall construe this as an excessive force claim

under the Fourth Amendment. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

A criminal suspect, once seized, should be free from "unreasonable force" of a government official pursuant to the Fourth Amendment. *Id.* at 394. To determine whether "unreasonable force" was used, the Court should ask whether the force was objectively unreasonable in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1516 (10th Cir. 1995) (citing *Graham*, 490 U.S. at 397). This is a fact-specific inquiry that calls for a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.

Such analysis requires the Court to look at the totality of the circumstances and weigh the following considerations: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. In undertaking this assessment, the Court views the facts from the "perspective of a reasonable officer on the scene," not from the subjective perspective of the officer involved. *Id.*; *Tanberg v. Sholtis*, 401 F.3d 1151, 1168 (10th Cir. 2005)

The Court begins its analysis with the first *Graham* factor—the severity of the crime at issue. It is undisputed that Plaintiff was under mobile surveillance for suspicion of drug trafficking. The Court has found that Plaintiff crashed his car into police officers,

including Defendants Longhi and Sharp, when they attempted to arrest him. Plaintiff was charged with assault and battery on law enforcement officers and drug possession and trafficking charges. (Doc. 5 at 3). He was ultimately indicted and entered a plea of "no contest" to one charge of trafficking cocaine, two charges of aggravated battery with a deadly weapon, and one charge of tampering with evidence. (Doc. 42 at Ex. A). All of these crimes were felonies under New Mexico law at the time of the incident, and aggravated battery with a deadly weapon is an inherently violent crime. (Doc. 42 at Ex. A).

The Court must look to whether Plaintiff posed an immediate threat to the safety of the officers or others in weighing the second *Graham* factor. The facts show that Plaintiff disregarded repeated orders to stop. In his attempt to flee, Defendant Gordon testified that Plaintiff ran stop lights and was driving at a dangerous speed through a residential neighborhood. Plaintiff's unpredictable actions behind the wheel and on foot put the public at risk.

Defendant Sharp testified that Plaintiff initially held his arms up, but dropped them to his waist in a "fighting" or "aggressive stance" as he exited the storage shed. The situation during Plaintiff's arrest was uncertain and a reasonable officer would have been concerned that he faced imminent danger from a lethal weapon. *See Wilson v. City of Lafayette*, No. 11-1403, 510 Fed. App'x. 775, 779 (10th Cir. Feb. 13, 2013) (unpublished). In similar circumstances the Tenth Circuit has said that "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed. . . . A reasonable officer need not await the glint of steel before taking self-protective action; by then, it is

often too late to take safety precautions." *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (alterations omitted) (internal quotation marks omitted).

As to the third *Graham* factor, there is no question that Plaintiff actively resisted arrest. Plaintiff admits that he drove away from Defendants, abandoned his car to evade capture on foot, and hid inside a stranger's storage shed. Plaintiff's subjective belief that Defendants were not law enforcement is irrelevant to this inquiry because *Graham* requires the Court to proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Wilson*, 510 Fed. App'x. at 779.

Plaintiff was involved in a vehicle collision and manhunt prior to his arrest, and either broke through, or climbed, a wooden fence to secret himself in a storage closet. Plaintiff alleges that he "was yanked out of the closet and taken down in an arm bar by Officer Longhi and punched by Officer Sharp." (Doc. 1 at 4). In *Plaintiff's Response to Defend[a]nt[s'] Supplemental Memorandum*, he elaborated further, stating that "as I exited the shed with my hands-up [sic] as indicated by [Defendant] Sharp, I was punched in the left-side [sic] of my face by [Defendant] Sharp. The blow's impact sent me sailing into [Defendant] Longhi's direction, where I was then took down to the ground by an arm bar . . . ." (Doc. 66 at 4). He claims that while on the ground and handcuffed, he was "repeatedly stomped and punched by officers" and that he still has boot marks in his skin. (Doc. 1 at 4). He also stated that he had been "slammed to the ground and forcefully punched and kicked by officers for a very long period of time." (Doc. 6 at 3). He states that he was assaulted by several officers, while he was lying face down in handcuffs, and that the officers carried weapons and had a ten-to-one advantage over him. (Doc. 66 at 5, 8; TR 13:1–11, 20–25).

There is no dispute that Defendants Longhi and Sharp restrained and handcuffed Plaintiff after they found him hiding in a storage closet behind an apartment building. Defendants Longhi and Sharp admit they had a "brief scuffle" with Plaintiff and then had to forcibly subdue him by taking him down to the ground using an arm-bar technique and that they had to go "hands on."

Plaintiff's testimony is the only support in the record for his claim that Defendants used excessive force during the arrest. The Court conducted the evidentiary hearing so that it could make a credibility determination of the Plaintiff's and Defendants' versions of the disputed facts underlying Plaintiff's various claims. In the Complaint, Plaintiff refers to one other witness to his alleged beating—a woman that lived in the apartment complex where the storage shed was located. (Doc. 1 at 2). He stated that "[o]fficers beat me in such a manner that a lady came out of her house to inquire upon the commotion and officers directed the woman to go back in her home and then continued to beat me." (Doc. 1 at 2). During the hearing Plaintiff testified that he was hiding in the storage closet when he heard a woman come out to inquire about the police breaking the apartment fence; she was told by the police officers to go back in her house. (AR 13:1–7). Plaintiff's testimony was inconsistent with his previous assertion in the Complaint. Therefore, the Court finds that Plaintiff's statements regarding the incident to be not credible.

Plaintiff points the Court to the photographs submitted by Defendants with their *Martinez* Reports. The photographs of Plaintiff taken after the scene show bruises, scrapes, and dirt all over his body. Plaintiff claims they are conclusive proof that he was assaulted, and that the bruising around his left eye is consistent with his claim he was

punched by Defendant Sharp as he exited the storage shed. (Doc. 39 at 2; Doc. 66 at 5). He argues that the bleeding, bruising, and marks on his face "would not be possible if [he] were simply taken to the ground first" and are "marks left from an assault" made by Defendants' feet and knees. (Doc. 66 at 5).

However, there was no testimony or medical evidence presented that would show that the scratches or marks on Plaintiff's body were caused by the physical assault that Plaintiff describes. The Court finds that the injuries shown in the photographs are consistent with those that would be reasonably sustained by a person involved in a car wreck, pursued by law enforcement by car and on foot, and then forcibly arrested. The evidence in the record shows that he was only treated for his subjective complaints of pain, and not for any diagnosed physical injury. It is true that permanent and serious injury is not required for "unreasonable force" to have been used, and psychological injuries may be sufficient. *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). However, Plaintiff has not provided any evidence to show that his "pain and suffering" or the marks and bruises were the direct result of "being beaten" by Defendants Longhi and Sharp.

To succeed on his Fourth Amendment claims, Plaintiff must show that as of October 2010, the force that Defendants used under the rapidly evolving circumstances they faced was clearly excessive, which Plaintiff has failed to do. *See Wilson*, 510 Fed. App'x. at 779. The Court does not have to take Plaintiff's allegations in the light most favorable to him and finds that Plaintiff's testimony at the evidentiary hearing is not competent evidence from which a jury may infer that excessive force was used. Plaintiff has not identified any authority or general legal principle suggesting that Defendants

Longhi and Sharp's actions during and after the arrest were excessive in light of their legitimate self-defense interest. *Id.* The Court finds that, after considering the totality of the circumstances, Defendants Longhi and Sharp used reasonable force in arresting Plaintiff. Therefore, the Court recommends that Plaintiff's excessive force claims under the Fourth Amendment be dismissed with prejudice.

> 3.   *Official Capacity*

Plaintiff has sued Defendants in their official capacity as law enforcement officers. Again, Defendants have failed to address these claims in any of their filings, despite being ordered to do so.

Plaintiff does not allege that Bernalillo County Sheriff's Office has a policy condoning the use of excessive force. Plaintiff states in his Complaint that the Middle Rio Valley Narcotics Task Force has been suspended by the DEA for the illegal activities of the officers on the task force, but fails to provide any evidentiary support for that contention. (Doc. 6 at 4). The Court will construe Plaintiff's argument liberally and assume he is actually alleging that, as per custom, the task force was imbued with authority by Bernalillo County to engage in illegal activities. However, Plaintiff has failed to allege that such illegal activities include the use of excessive force. Therefore, the Court finds that Plaintiff has failed to state a claim against Defendants in their official capacity, and recommends that Plaintiff's claims against Defendants in their official capacity be dismissed.

> F.   <u>*Remaining Claims*</u>

Plaintiff asserts he is entitled to relief on the grounds of "pain and suffering" and "mental anguish." (Doc. 1 at 5, 6). Plaintiff alleges that his injuries were compounded by

the delayed and inadequate medical treatment he received, and that he lives in fear of law enforcement officers and the possibility he could be abused again. Plaintiff must specifically identify constitutional rights he alleged were violated to warrant an award of damages; "[c]onclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981). The Court has reviewed the Complaint liberally, and finds that the claims of "pain and suffering" and "mental anguish" are not cognizable constitutional claims. Therefore, the Court recommends that these claims be dismissed.

Plaintiff requests that the Court enter a restraining order against Defendants to protect his family and himself. Plaintiff has not alleged ongoing harm since first requesting this remedy in 2011. Plaintiff's subjective fears of Defendants do not suffice. The Court finds that there is no basis for the requested relief, and recommends that the request for a restraining order be denied.

Plaintiff also alleges that Defendants violated the Confrontation Clause of the Sixth Amendment because he was never allowed to confront the confidential informant. (Doc. 6 at 4; Doc. 66 at 7–8). "The Sixth Amendment's Confrontation Clause confers upon the accused '[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him.'" *Bullcoming v. New Mexico*, 131 S.Ct. 2705, 2713 (2011) (quoting U.S. CONST. amend. VI). Plaintiff has asserted no facts against Defendants showing they impeded his right to confront the confidential informant in violation of his constitutional rights. Further, because Plaintiff waived his right to trial, the Confrontation Clause was never implicated. Finally, the Court finds that such a claim is more appropriate for a petition for habeas corpus relief, rather than as a § 1983 claim. *See Schmaltz v. Roesink*, 2009 U.S. Dist. LEXIS 16828, *12–13 (D.N. Colo. 2008) (citing

*Heck*, 512 US at 486–87). The Court finds that Plaintiff has failed to state a valid claim against Defendants, and recommends that the claim be dismissed without prejudice.

Plaintiff also claims that Defendants violated his Thirteenth Amendment rights. (Doc. 6 at 4). The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States." U.S. CONST. amend. XIII, § 1. The Court cannot determine the basis of the claim because Plaintiff has not made any factual allegations that his Thirteenth Amendment rights have been violated; his allegation is entirely conclusory. In addition, it is well-settled that the Thirteenth Amendment's restriction on involuntary servitude does not apply to prisoners. *Ruark v. Solano*, 928 F.2d 947, 949–50 (10th Cir. 1991). Therefore, the Court recommends that this claim be dismissed with prejudice.

The Court recommends that all of the federal law claims be dismissed from this lawsuit. Therefore, the Court also recommends that pendant jurisdiction be denied as to any remaining state law claims, to the extent that they exist, and that any such claims against Defendants be dismissed without prejudice.

## V.    Conclusion

**IT IS THEREFORE RECOMMENDED THAT:**

(1)    Plaintiff's claims against Defendants Medrano, Sharp, Erb, and James that they effectuated an unreasonable search and seizure by crashing into Plaintiff's car be **DISMISSED WITH PREJUDICE**;

(2)    Plaintiff's claims against Defendants Medrano, Hix, and Gordon for malicious prosecution be **DISMISSED WITHOUT PREJUDICE**;

(3)     Plaintiff's claims against Defendants for deprivation of property without

due process of law be **DISMISSED WITHOUT PREJUDICE**;

(4)     Plaintiff's claims against Defendants for being deliberately indifferent to

Plaintiff's serious medical needs in violation of the Fourteenth Amendment be

**DISMISSED WITH PREJUDICE**;

(5)     Plaintiff's claims against Defendants Medrano, Sharp, Erb, James, and

Longhi for using unreasonable or excessive force in violation of Plaintiff's Fourth

Amendment and due process rights be **DISMISSED WITH PREJUDICE**;

(6)     Plaintiff's claims for "pain and suffering" and "mental anguish" be

**DISMISSED WITHOUT PREJUDICE**;

(7)     Plaintiff's request for a restraining order be **DENIED**;

(8)     Plaintiff's claims against Defendants for violating the Confrontation Clause

of the Sixth Amendment be **DISMISSED WITHOUT PREJUDICE**;

(9)     Plaintiff's claims against Defendants for violating his Thirteenth

Amendment rights be **DISMISSED WITH PREJUDICE**; and

(10)    Plaintiff's Complaint, and any remaining claims, to the extent that they

exist, be **DISMISSED** pursuant to the recommendations above.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE